**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3353-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAQUAY WILLIAMS, a/k/a
JAMES WATTS, JAMALL
WILLIAMS, JAMES C. WATTS,
LAQUAI C. TERRE, LAQUAI C.
TERREWILLIAMS, and LAQUAI
C. WILLIAMS,

    Defendant-Appellant.

_____

Submitted November 19, 2025 – Decided January 22, 2026

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-09-2500.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Kristen Nicole Pulkstenis, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Laquay Williams appeals from the denial of his petition for post-conviction relief (PCR) following an evidentiary hearing. Because we conclude he fails to sustain his burden under Strickland v. Washington, 466 U.S. 668 (1984), we affirm.

We affirmed defendant's conviction on direct appeal, State v. Williams, No. A-5036-14 (App. Div. Mar. 15, 2017). On his appeal from the denial of PCR, we "[a]ffirmed in part, reversed in part, and remanded for a hearing . . . ." State v. Williams, No. A-1515-21 (App. Div. Oct. 10, 2023) (slip op. at 19). We recite portions of that opinion to provide context:

> In 2015, defendant . . . was convicted of a murder outside an Atlantic City strip club. At around four in the morning on December 29, 2006, Jerrod Moss, also known as "EZ[,]"[] was shot and killed in a parking lot, across the street from a strip club in Atlantic City. A lengthy police investigation followed, in which numerous eyewitnesses came forward and identified defendant as the shooter. On September 18, 2013, an Atlantic County Grand Jury indicted defendant on four counts: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a handgun by a convicted person, N.J.S.A. 2C:39-5(b); and second-degree

2

possession of a handgun by a convicted person, N.J.S.A. 2C:39-7.

Defendant was convicted on all counts and sentenced to over seventy years in prison. . . .

Defendant filed for [PCR], alleging ineffective assistance of counsel, based primarily on . . . trial counsel's failure to call Cory Benning as a defense witness. . . .

[Id. at 2-3 (footnote omitted).]

Further,

defendant produced a letter sent to him by trial counsel on May 20, 2014, which describes an interview with a potential witness named . . . Benning. In the letter, counsel states Benning "was very cooperative and is willing to testify in your trial on your behalf" and that he heard the gunshot "come from behind him" while defendant was "with him and in his field of vision when the shot was fired." Benning had previously given a statement to police, but that statement lacks these exonerating details described in counsel's letter.

The PCR court rejected defendant's arguments . . . .

[Id. at 7.]

Additionally, as to Benning, we reasoned:

Because of [the earlier interview with police], . . . Benning's testimony at trial, even if consistent with the information contained in [counsel's letter to defendant], would be subject to impeachment. Moreover, trial counsel can be said to have exercised quintessential

3

trial strategy in choosing not to call a witness as the proofs began to develop at trial. In light of the other eyewitness testimony and the physical evidence, including conclusive DNA evidence showing [defendant's] presence at the scene, trial counsel appears to have made the strategic choice to jettison a witness whose testimony would have been at odds with the balance of the proof in the case.

[Id. at 8-9 (all but first alteration in original).]

We considered that:

Defendant . . . argues the PCR court erred by rejecting his claim that his counsel was ineffective by not having . . . Benning testify at trial. Specifically, he submits the PCR court erred by justifying its decision on the premise that Benning's earlier statement to police was contradictory and would open him to impeachment. Defendant argues an objective reading of the earlier transcript does not conflict with Benning's apparent later statement that defendant was "with him and in his field of vision when the shot was fired."

[Id. at 11.]

We stated "[i]n most situations involving trial strategy, a defendant must allege specific errors and demonstrate how those errors prejudiced him." Id. at 12 (citing U.S. v. Cronic, 466 U.S. 648, 659 n.26 (1984)). We concluded "[d]efendant has provided proof his trial counsel found and interviewed a willing and favorable alibi witness yet did not call the witness to testify. Defendant alleges a specific error . . . [and c]ounsel's decision, if not justified, could have

4

been very prejudicial to his case." Id. at 12-13. Therefore, "we remand[ed] for an evidentiary hearing on this issue, to obtain an explanation from counsel as to why Benning was not called." Id. at 17.

On remand, the PCR court held an evidentiary hearing on April 11, 2024. Defendant's trial counsel was the only witness called to testify. The court authored a sixteen-page written decision accompanying its order denying relief. The court considered the parties' briefs, defendant's exhibits, and an additional letter from defendant submitted after the evidentiary hearing.

The court noted counsel was a "highly experienced trial attorney who had thirty-two years of experience as a lawyer at the time of [defendant]'s trial." Further, a substantial majority of counsel's trials "were criminal jury trials in both the federal and state courts of New Jersey." The court found counsel's "testimony was reliable, complete, and entirely credible." Moreover, "[b]ased on the credible and persuasive testimony" the court made specific factual findings.

The PCR court found counsel had one telephone conversation with Benning. During that conversation, Benning "stated that the shot came from behind him, and that [defendant] was with . . . Benning in his line of view." During the call, Benning advised counsel that "he was in Georgia . . . and it

5

would be difficult . . . for him to return to New Jersey due to warrants out for his arrest."  Counsel "obtained an address and good phone number to contact . . . Benning again."  "[B]efore conducting further inquiry," counsel wrote to defendant to advise of "Benning's potential ability to testify on [his] behalf . . . as an alibi witness."

Counsel "tried calling the number" and "sent two letters in total to . . . Benning."  However, he never heard from or spoke to Benning again.  Counsel asked defendant "if he had any contact with . . . Benning, but he did not since he was incarcerated at that time."

Counsel explained he did not try to subpoena Benning because:  (1) Benning was not at the address provided; (2) Benning was a cooperating witness and "he did not want to jeopardize that"; (3) Benning did not answer phone calls or respond to letters; and (4) counsel was unsure about Benning's testimony.

Further, counsel stated that while Benning's statement on the phone was exculpatory, it was limited by Benning's other statements.  For instance, Benning told police "that he did not see [defendant] at the scene and never stated that he did not know where" defendant was and while he "saw a group of people at the scene," "he could not really see who the people were and never saw any of them before."  Counsel opined that, in his experience, Benning's statements

6

to police and to counsel on the phone presented "clear inconsistencies" which needed to be clarified before trial. Moreover, counsel's experience dictated that it was neither "professional [n]or effective . . . to put a witness on the stand without . . . knowing what that witness will testify to."

The PCR court found "the strategic decision to not call . . . Benning was a sound trial strategy." The court noted Benning "failed to make further contact with" counsel and failed to clear up his inconsistent statements. The court found counsel "could not put [Benning] on the stand without knowing exactly how he would testify, and which statement, out of his various statements, was the true statement." Therefore, the court concluded counsel's performance was not deficient.

Moreover, the PCR court found that if Benning provided testimony, "his credibility would have suffered," and been "impeached" under cross-examination, because of his inconsistent statements. The court noted counsel's "main trial strategy was to argue unreliability of eyewitness testimony" and counsel "would be asking the jury to believe . . . Benning's inconsistent testimony, while urging for the jury not to believe all the other eyewitness testimony." The court concluded "[t]he presence of one unreliable and absent

7

witness cannot be said to have such an impact on the outcome of the trial as to change the verdict."

On appeal, defendant presents the following argument for our consideration:

> BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE FROM TRIAL COUNSEL, THE PCR JUDGE ERRED IN DENYING DEFENDANT'S PETITION FOR RELIEF.
>
> (A) Legal Standards Governing Applications For P[CR].
>
> (B) Testimony At The Court Ordered Remand Hearing Conclusively Established That Defendant Received Ineffective Assistance Of Counsel.

Defendant argues "counsel did next to nothing to ensure [Benning's] appearance at . . . trial." Defendant faults counsel for not "obtain[ing] a Georgia address by which . . . [Benning] could be contacted" and for failing to "check . . . [Benning's] current whereabouts." In addition, defendant contends counsel "never sent anyone to check with residents . . . to see if they knew how to reach" Benning and did not "check with the post office to see if there was a forwarding order on file." Defendant asserts counsel should "never have interviewed . . . [Benning] alone" and should "have had an investigator conduct the interview"

A-3353-23

or locate Benning. Also, defendant contends counsel's failure to subpoena Benning was "inexcusable."

Further, defendant argues "[t]he significance of . . . Benning's testimony cannot be underestimated." He asserts Benning's testimony, along with other trial witness testimony, "would have been sufficient to raise a reasonable doubt in the minds of the jurors."

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. See Nash, 212 N.J. at 541; State v. Preciose, 129 N.J. 451, 459 (1992) ("A petitioner must establish the right to such relief by a preponderance of the credible evidence."). To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency

prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58-59 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (Quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
>
> [Id. at 689 (citation reformatted).]

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. That is, "there is a reasonable probability that, but for

10

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability of the" proceeding. Cronic, 466 U.S. at 659 n.26.

Applying this well-established law, we conclude defendant failed to establish entitlement to relief. We start with the fact that Benning failed to re-engage with counsel after the one phone call. Benning provided counsel with an address and phone number, but despite counsel's efforts, Benning remained unreachable. Defendant's attempt to second-guess counsel's efforts ignores that there was no reason for counsel, at least initially, to doubt Benning's willingness to assist the defense. After it became clear Benning was not going to re-engage, counsel's strategy was not to try to summon a witness whose testimony was unknown. Instead, counsel's strategy was to focus on the lack of an eyewitness to the shooting. Under these circumstances, we conclude defendant failed to establish counsel's performance was deficient under the first Strickland prong.

In addition, Benning's statements, to the police and to counsel, were not consistent. Even assuming Benning appeared at trial, he would have been subject to the State's cross-examination, where his credibility could have been impeached. Under these circumstances, we conclude defendant failed to

11

establish counsel's performance undermined his right to a fair trial under the second <u>Strickland</u> prong.

Defendant failed to satisfy either <u>Strickland</u> prong. Therefore, we conclude he is not entitled to relief. To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division